**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES ex rel. JOSE MEDRANO (#A51233), ) ) ) | |
| Petitioner, ) ) ) | Case No. 09 C 5327 |
| v. ) ) | |
| GUY PIERCE, Warden, Pontiac Correctional Center, ) ) ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Jose Medrano's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Medrano's habeas petition.

## BACKGROUND

Medrano does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's opinions, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Pole v. Randolph,* 570 F.3d 922, 934 (7th Cir. 2009). The Court adopts the underlying facts as set forth by the Illinois Appellate Court in *People v. Medrano,* No. 01-94-2069 (Ill.App.Ct. 1996) (unpublished), *People v. Medrano,* Nos. 01-97-3718 & 01-97-4612 (Ill.App.Ct. 1998) (unpublished), *People v. Medrano,* No. 01-00-0857 (Ill.App.Ct. 2002) (unpublished), and *People v. Medrano,* No. 01-05-1634 (Ill.App.Ct. 2008) (unpublished). The Court begins with a brief recounting of the relevant facts as determined by the Illinois Appellate Court. *See Easley v. Frey,* 433 F.3d 969, 970 (7th

Cir. 2006).

I.  **Factual Background**

On May 15, 1992, at approximately 1 a.m., Medrano attacked nineteen-year-old T.B., who was working at the front desk of the Forest Lodge Motel in Prospect Heights, Illinois. More specifically, Medrano, who was an occupant of the motel at that time, approached T.B. and asked whether some jewelry had been found and whether he could have a cash advance on his credit card. Thereafter, Medrano ordered a bottle of champagne and when T.B. turned to get it, he attacked her, forced her to the floor, pulled out a knife, and fondled her breasts. Medrano then forced her at knifepoint to open the cash register from which he took approximately $130.00. Medrano also tied T.B.'s hands behind her back and placed a gag around her mouth. He then thrust his penis in her face.

Shortly thereafter, Medrano pulled T.B., who remained tied and gagged, to a field outside the motel. He threw her to the ground and placed his penis in her hands and then placed his penis under the mouth gag so that it came in contact with her lips, teeth, and tongue. Medrano stated that he would have to kill T.B. because he did not want to "go back to jail." Medrano strangled T.B. until she was unconscious, put her in the trunk of his car, and drove to another location. While in the trunk, T.B. regained consciousness. Her mouth gag had slipped, and she had untied her hands. When Medrano opened the trunk, T.B. pretended to be dead. Medrano then pulled her from the trunk, threw her to the ground, and began cutting her neck with the knife. T.B. first resisted and then pretended to be dead. Medrano also pushed her down a hill and kicked her into a small creek.

After Medrano left, T.B. staggered to a nearby apartment complex after which she was

taken to a hospital. Later, she did not recall any of the conversations she had with medical and police personnel prior to her medical treatment, which included surgery for her neck wounds. The following day, while in intensive care, T.B. identified Medrano as her assailant from a police photo array and the police arrested Medrano that evening.

When the police arrested Medrano, he stated: "How did you figure it out so fast?" He subsequently gave the police a complete statement admitting to the crimes. The police reduced his statement into writing, which Medrano corrected, but then refused to sign because it included the fact that he had said to T.B. that he would have to kill her to avoid police identification.

## II.     Procedural Background

On March 3, 1994, following a jury trial in the Circuit Court of Cook County, Illinois, the jury convicted Medrano of attempted first degree murder, armed robbery, aggravated criminal sexual abuse, aggravated kidnaping, aggravated criminal sexual assault, and aggravated battery. The trial court sentenced Medrano to a total of ninety years of imprisonment, which included (1) concurrent terms of sixty years for attempted murder and fifteen years for aggravated kidnaping, and (2) two concurrent terms of thirty years for aggravated criminal sexual assault and armed robbery with the concurrent thirty-year terms ordered to run consecutively to the concurrent terms of sixty and fifteen years.

Medrano appealed his convictions and sentences arguing that: (1) the trial court should have excluded his statement to the victim that he had to kill her to avoid returning to jail; (2) he was prejudiced by the prosecutor's comments that he had bought cocaine on the day before the crime; (3) the prosecutor made improper arguments relating to the drug evidence and Medrano's verbal threat to the victim; (4) the prosecutor improperly shifted the burden of proof; (5) there

3

was insufficient evidence to support the aggravated criminal sexual assault and sexual abuse charges; and (6) the trial court improperly entered judgment on three aggravated criminal sexual assault counts because they were all based on a single act of penetration. The Illinois Appellate Court vacated two of Medrano's aggravated criminal sexual assault convictions, but affirmed the remaining convictions. The Illinois Appellate Court also remanded the case to the trial court for re-sentencing because certain aspects of Medrano's sentence violated Illinois' consecutive terms of imprisonment statute, 730 ILCS 5/5-8-4(a). Medrano then filed a petition for leave to appeal ("PLA") that the Supreme Court of Illinois denied on December 4, 1996.

On remand, the trial court again imposed an aggregate ninety-year term of imprisonment after restructuring Medrano's sentence in accordance with the Illinois Appellate Court's instructions. While the trial court's decision was pending on remand, Medrano filed a petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, arguing that he was denied his right to due process because he was unfit to stand trial. The post-conviction trial court dismissed Medrano's petition of September 26, 1997.

Medrano filed separate appeals concerning the trial court's sentencing order and the trial court's dismissal of his post-conviction petition. The Illinois Appellate Court consolidated Medrano's two appeals, vacated Medrano's sentence and the order dismissing his post-conviction petition, and then remanded the case to the trial court for resentencing and for further proceedings in accordance with the Illinois Post-Conviction Hearing Act.

Following the Illinois Appellate Court's remand for resentencing, the trial court again sentenced Medrano to an aggregate term of ninety years of imprisonment. Medrano appealed arguing that his sentence was unconstitutional under *Apprendi v. New Jersey,* 530 U.S. 466, 120

4

S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Illinois Appellate Court affirmed Medrano's sentence. Medrano then filed a PLA that the Supreme Court of Illinois denied on February 5, 2003.

Meanwhile, following the Illinois Appellate Court's remand for further post-conviction proceedings, Medrano filed a supplemental post-conviction petition arguing that: (1) he was denied his right to due process because the trial court failed to conduct a fitness hearing; (2) he was denied his right to effective assistance of counsel because his trial counsel failed to request a fitness hearing; (3) he was denied his right to effective assistance of counsel on direct appeal because his appellate counsel did not raise the trial court's failure to hold a fitness hearing or its denial of his motions to suppress statements and quash his arrest; (4) his sentence violated *Apprendi*; (5) the trial court failed to conduct a fair sentencing hearing; and (6) the trial court erroneously sentenced petitioner on a charge on which he was not convicted. On May 5, 2005, the trial court dismissed Medrano's post-conviction petition.

Medrano appealed the dismissal of his post-conviction petition raising arguments related to his fitness to stand trial, namely: (1) he was denied his right to due process because the trial court failed to conduct a fitness hearing; (2) he was denied his right to effective assistance of counsel because his trial counsel failed to request a fitness hearing; and (3) he was denied his right to effective assistance of counsel on direct appeal because his appellate counsel did not raise the trial court's failure to hold a fitness hearing. The Illinois Appellate Court affirmed on the ground that Medrano waived his fitness claim and related trial counsel claims by failing to raise them on direct appeal. The Illinois Appellate Court, however, did not address Medrano's claim that he was denied ineffective assistance of appellate counsel. Thereafter, Medrano filed a PLA raising the same issues that he raised on appeal to the Illinois Appellate Court. The

5

Supreme Court of Illinois denied Medrano's PLA on September 24, 2008.

### III. Habeas Petition

On August 28, 2009, Medrano filed the present pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). Construing his pro se allegations liberally, *see McGee v. Bartow,* 593 F.3d 556, 565-66 (7th Cir. 2010), Medrano's habeas claims include: (1) the trial court improperly admitted evidence of uncharged conduct; (2) the State failed to prove him guilty beyond a reasonable doubt as to his aggravated criminal sexual abuse or aggravated criminal sexual assault charges; (3) the State improperly shifted the burden of proof and vouched for its witnesses during closing arguments; (4) he was denied his Sixth and Fourteenth Amendment rights because: (a) he was unfit to stand trial; (b) he was denied effective assistance of trial counsel in regard to his fitness to stand trial; and (c) he was denied effective assistance of appellate counsel in regard to his fitness to stand trial; (5) his sentence violated *Apprendi*; and (6) he was denied his right to effective assistance of trial counsel because his counsel failed to reasonably investigate his defense.

## LEGAL STANDARDS

### I. Habeas Standard

"Section 2254 [of title 28] circumscribes a federal court's ability to grant habeas relief to prisoners in state custody." *Malone v. Walls,* 538 F.3d 744, 753 (7th Cir. 2008). Specifically, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Brown v. Finnan,* 598 F.3d 416, 421

(7th Cir. 2010). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405; *see also Brown,* 598 F.3d at 421-22.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407; *Brown,* 598 F.3d at 422. "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable.'" *Bennett v. Gaetz,* 592 F.3d 786, 790 (7th Cir. 2010) (citation omitted); *see also Williams*, 529 U.S. at 410 ("***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Bennett,* 592 F.3d at 790 (citation omitted). Put differently, to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances" of the case. *Williams v. Thurmer,* 561 F.3d 740, 746 (7th Cir. 2009); *Simpson v. Battaglia,* 458 F.3d 585, 592 (7th Cir. 2006).

**II.     Exhaustion and Procedural Default**

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies available to him in state court. *See Gonzales v. Mize,* 565 F.3d 373, 380 (7th Cir. 2009); 28 U.S.C. § 2254(b)(1)(A). In particular, a habeas petitioner must fully and fairly present his federal claims to the state courts before he files his federal habeas petition. *See O'Sullivan v.*

7

*Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Sturgeon v. Chandler,* 552 F.3d 604, 610 (7th Cir. 2009). "A procedural default occurs where a habeas petitioner 'has exhausted his state court remedies without properly asserting his federal claim at each level of state court review.'" *Crockett v. Hulick,* 542 F.3d 1183, 1192 (7th Cir. 2008) (citation omitted).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## ANALYSIS

**I.  Evidentiary Claim**

Medrano's first habeas claim is that the trial court erred by denying his motion in limine to preclude argumentative or evidentiary references to his prior contact with the criminal justice system and other bad acts evidence. Any claim based on the trial court's evidentiary rulings is not a cognizable habeas claim because state court evidentiary errors do not implicate Medrano's constitutional rights. *See Johnson v. Acevedo,* 572 F.3d 398, 402 (7th Cir. 2009) ("A violation of state law is not the basis for federal collateral relief"). In other words, "a federal court cannot

issue a writ of habeas corpus that rests on a belief that a state court has misunderstood or misapplied state law." *Huusko v. Jenkins,* 556 F.3d 633, 637 (7th Cir. 2009). Therefore, whether the state trial court erred in ruling on Medrano's motion in limine to exclude evidence is a matter beyond the scope of federal habeas review, especially in light of the fact that Medrano does not reference any violation of his Fourteenth Amendment due process right to a fundamentally fair trial in his state court filings. *See Perruquet v. Briley,* 390 F.3d 505, 511-12 (7th Cir. 2004); *see also Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules") (citation omitted). The Court therefore denies Medrano's first habeas claim.

## II. Sufficiency of the Evidence Claim

Next, Medrano argues that the State failed to prove beyond a reasonable doubt that he was guilty of aggravated sexual abuse and aggravated criminal sexual conduct. The clearly established Supreme Court law that applies to this habeas claim is set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Brown v. Finnan,* 598 F.3d 416, 421 (7th Cir. 2010) ("'[c]learly established federal law' means 'the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision.'") (quoting *Lockyer v. Andrade,* 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). *Jackson* holds that a petitioner's Fifth and Fourteenth Amendment due process rights are satisfied if – when viewing the evidence in the light most favorable to the prosecution – "***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original); *United States v. Harris,* 585 F.3d 394, 402 (7th Cir. 2009)

9

("challenge to the sufficiency of the evidence is reviewed under an extremely deferential standard"). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319.

In rejecting Medrano's sufficiency of the evidence claim, the Illinois Appellate Court stated:

> In reviewing a claim that the evidence was insufficient to support a criminal conviction, the reviewing court should examine the record and determine whether the evidence could reasonably support a finding of guilt beyond reasonable doubt. *People v. Campbell,* 146 Ill.2d 363, 374, 166 Ill.Dec. 932, 586 N.E.2d 1261 (1992). The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young,* 128 Ill.2d 1, 48-51, 131 Ill.Dec. 78, 538 N.E.2d 453 (1989). A reviewing court is not to substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses. Furthermore, a conviction will not be reversed unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Young,* 128 Ill.2d at 51, 131 Ill.Dec. 78, 538 N.E.2d 453.
>
> A sexual abuse/assault victim's testimony by itself is sufficient to sustain such charges against a defendant. Also, the defendant's argument regarding impeachment of the victim's testimony regarding fondling is devoid of perceivable merit. The record amply demonstrates that T.B. was severely traumatized by her frightful experience with defendant. It must be kept clearly in mind that the evidence established T.B. was robbed at knifepoint, sexually attacked, strangled, bound and gagged, placed in the trunk of a car, taken to an unfamiliar location and slashed repeatedly across the throat with a knife. In light of having just survived such a horror, her failure to immediately report the fact that the defendant also fondled her breasts is not per se impeaching.
>
> Defendant's argument concerning the insufficiency of evidence regarding oral penetration is also meritless. There was no evidence whatsoever that T.B.'s mouth was gagged so tightly as to prevent penetration. Indeed, the evidence shows that the gag around T.B.'s mouth came down around her neck when she was in the trunk of defendant's auto. According to the evidence, the act of oral penetration occurred just prior to defendant's placement of T.B. in his trunk. Given such evidence, we cannot say that it was unlikely that defendant's penis penetrated T.B.'s mouth.
>
> T.B. testified that defendant placed his penis in her mouth so that it made contact

with her lips, teeth and tongue. Nurse Remington, who treated T.B. immediately after the accident, testified that T.B., when specifically asked, said that defendant put his penis in her mouth, but did not ejaculate. Any discrepancy between this testimony and T.B.'s statements after the incident that she was not sure whether she had been or had not been "sexually assaulted" is understandable, given the evidence of T.B.'s condition. The evidence reveals T.B. was traumatized, and that she may have misunderstood the term "sexually assaulted" to mean only rectal or vaginal intercourse.

Lastly, defendant's written statement to police included the admission that he had placed his penis in T.B.'s mouth. Although defendant now disputes the accuracy of that statement, when he was afforded the opportunity to modify the incriminating document, he did not change or delete this admission of oral penetration. In sum, the evidence amply demonstrated the occurrence of oral penetration.

We conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant fondled T.B.'s breasts and penetrated her mouth with his penis. The evidence is not so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt. On the contrary, we conclude that the jury's verdict on these issues is well supported.

*People v. Medrano,* No. 01-94-2069, at 14-17.

In denying Medrano's sufficiency of the evidence claim, the Illinois Appellate Court recognized the correct legal standard that "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See People v. Young,* 128 Ill.2d 1, 48-49, 131 Ill.Dec. 86, 538 N.E.2d 461 (Ill. 1989) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Furthermore, applying the correct legal rule, the Illinois Appellate Court's decision was "at least minimally consistent with the facts and circumstances" of this case. *See Williams*, 561 F.3d at 746. To clarify, the Illinois Appellate Court rejected Medrano's argument that there was insufficient evidence to sustain the charges of aggravated sexual assault and aggravated sexual abuse because the victim's own testimony was impeached and there was no physical evidence corroborating her testimony. The Illinois Appellate Court concluded that the victim's testimony

11

by itself was not only sufficient to sustain these charges, but that the victim's statements were not impeached as Medrano claimed. *See United States v. Anderson,* 580 F.3d 639, 646 (7th Cir. 2009) ("We repeatedly have refused to question the credibility of witnesses when reviewing sufficiency-of-the-evidence challenges.") (quotations and citation omitted). Under these circumstances, the Court would be hard-pressed to conclude that the Illinois Appellate Court's conclusion was objectively unreasonable. *See Bennett,* 592 F.3d at 790 (to be objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion.") (citation omitted). Therefore, Medrano's sufficiency of the evidence claim fails.

### III.     Prosecutorial Misconduct Claim

Medrano further argues that the State improperly shifted the burden of proof and vouched for witnesses during closing arguments, and thus violated his due process rights. The clearly established Supreme Court law that applies to this habeas claim is set forth in *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). *See Ellison v. Acevedo,* 593 F.3d 625, 635 (7th Cir. 2010). More specifically, in evaluating a claim of prosecutorial misconduct, the relevant inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* 477 U.S. at 181. As *Darden* teaches, when reviewing a claim of prosecutorial misconduct, courts must determine whether the prosecutor's statements were improper and if the defendant was prejudiced. *See Ellison,* 593 F.3d at 635-36; *United States v. Myers,* 569 F.3d 794, 798 (7th Cir. 2009). In determining prejudice, courts examine a number of factors, including: "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the

12

accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." *Ellison,* 593 F.3d at 636 (citation omitted); *see also Darden,* 477 U.S. at 181-82.

In addressing Medrano's prosecutorial misconduct claim on direct appeal, the Illinois Appellate Court stated:

> Defendant next argues that the prosecutor improperly shifted the burden of proof during closing argument. We disagree.
>
> During closing argument, the defense extensively commented on the State's failure to present several witnesses. During its rebuttal, the State returned the favor by commenting, over objection, that defendant could have and would have presented that same testimony if it would have had been helpful. Following closing arguments, the trial court gave the jury general instructions concerning the burden of proof and the presumption of innocence.
>
> On appeal, defendant claims that he was denied a fair trial because the State's comments improperly shifted the burden of proof to the defense. The State responds that its commentary during rebuttal was: (a) invited by defense counsel's remarks, (b) cured by the trial court via its instructions and comments, even if improper, and (c) harmless error, at most, even if not cured by the trial court's comments. The defendant acknowledges that defense counsel invited the State's comments, but maintains that (a) they exceeded their permissible scope, (b) were not cured by general instructions, and (c) were not harmless because they affected the jury's consideration of aspects of the case in which there was not overwhelming evidence.
>
> A defendant in a criminal case has no burden of proof, and the burden of proof cannot be shifted in any way to the defense. *See generally Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Given this principle, the State may not comment on a defendant's failure to present witnesses or evidence, because to do so shifts the burden of proof to the defense. *People v. Nodal,* 89 Ill.App.3d 538, 44 Ill.Dec. 721, 411 N.E.2d 1087 (1980). Comments that distort the burden of proof warrant reversal. *See People v. Crossno,* 93 Ill.App.3d 808, 821, 49 Ill.Dec. 137, 417 N.E.2d 827 (1981).
>
> As the defendant himself recognizes in his briefs, the State's obligation to refrain from commenting on a defendant's failure to call witnesses is not absolute. The State may discuss a defendant's failure to call witnesses when such comments are made solely in response to defense counsel's own reference to the State's failure to call those witnesses. *People v. Carroll,* 260 Ill.App.3d 319, 346, 197 Ill.Dec. 696, 631 N.E.2d

1155 (1992); *People v. Wilburn,* 263 Ill.App.3d 170, 182, 200 Ill.Dec. 538, 635 N.E.2d 877 (1994) (State may properly respond to comments made by defense counsel which clearly invite response). Such comments by the State do not result in reversal. *See Wilburn,* 263 Ill.App.3d at 184, 200 Ill.Dec. 538, 635 N.E.2d 877.

Moreover, improper prosecutorial comments do not warrant reversal unless they are so prejudicial as to constitute a material factor in a defendant's conviction that would likely have resulted in a contrary verdict. *Carroll,* 260 Ill.App.3d at 345, 197 Ill.Dec. 696, 631 N.E.2d 1155. The character and scope of closing argument is left largely to the sound discretion of the trial court, and a reviewing court must indulge in every reasonable presumption that the trial court properly performed its duty and properly exercised the discretion vested in it. *Carroll*, 260 Ill.App.3d at 345, 197 Ill.Dec. 696, 631 N.E.2d 1155. The record reflects that the State's commentary was directly responsive to defense counsel's challenges that the State had not presented certain witnesses. Accordingly, *Wilburn* is on point.

Moreover, and again, in light of the overwhelming evidence presented by the State, the prosecutor's remarks and references could not have constituted a material factor such that a contrary verdict might have resulted in their absence. We specifically reject defendant's claims that the evidence was insufficient to convict him of the aggravated criminal sexual abuse and aggravated criminal sexual assault charges.

*People v. Medrano,* No. 01-94-2069, at 11-14.

In denying Medrano's prosectuorial misconduct claim, the Illinois Appellate Court recognized the correct legal standard. Although the Illinois Appellate Court did not discuss *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), under the AEDPA, the state court need not cite nor be aware of the relevant Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts" established Supreme Court precedent. *See Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). Here, the Illinois Appellate Court relied on Illinois case law that is consistent with *Darden*. *Compare People v. Wilburn,* 263 Ill.App.3d 170, 182, 200 Ill.Dec. 538, 635 N.E.2d 877 (Ill. 1994), and *People v. Carroll,* 260 Ill.App.3d 319, 346, 197 Ill.Dec. 696, 631 N.E.2d 1155 (1992), *with Darden,* 477 U.S. at 181-182. The Illinois Appellate Court also reasonably applied

the correct legal standard when it concluded that the State's commentary was directly responsive to defense counsel's challenges that the State did not present certain witnesses. *See Ellison,* 593 F.3d at 636. This conclusion is not an unreasonable application of clearly established Supreme Court law under the facts and circumstances of this case, especially in light of the trial court's jury instructions concerning the burden of proof and presumption of innocence. *See Emerson v. Shaw,* 575 F.3d 680, 684 (7th Cir. 2009) (to be an unreasonable application under AEDPA, the state court's decision must be so erroneous as to be objectively unreasonable); *see also Ellison,* 593 F.3d at 636. The Court therefore denies Medrano's third habeas claim.

## IV. Fitness Claims

In his fourth habeas claim, Medrano maintains that he was denied his right to due process under the Fourteenth Amendment because he was unfit to stand trial. In addition, he alleges that his trial counsel failed to provide constitutionally effective assistance of counsel in violation of the Sixth Amendment based on counsel's failure to raise the issue that he was unfit to stand trial. More specifically, Medrano argues that he was unfit to stand trial because – at the time of his trial – he was experiencing headaches, blackouts, and dizziness as a result of injuries sustained during a riot at the Cook County Jail. He argues that these injuries prevented him from assisting in his defense.

In his habeas petition, Medrano admits that his trial counsel did request a fitness hearing. *See* R. 1-1, Habeas Pet., at 34; *People v. Medrano,* No. 01-05-1634, at 2. Moreover, the record shows that the trial court ordered a fitness examination. *See People v. Medrano,* No. 01-05-1634, at 2. Specifically, defense counsel filed a motion to have Medrano examined at Cermak Hospital and Cermak's Director of Health Services issued a letter stating that he found Medrano

15

was fit to stand trial. *See id.* at 2-3. The letter stated that although Medrano had "occasional dizziness, there have been no physical findings on subsequent multiple physician examinations which indicate any neurologic sequelae" finding that Medrano had "no cognitive deficits." *See id*. at 3. The record also reflects that the trial judge ordered that Medrano receive a neurological examination in which the physician concluded that Medrano suffered from lightheadedness and headaches, but that there were no "contraindications to court appearance." *Id.*

In ruling on Medrano's fitness to stand trial claims, the post-conviction Illinois Appellate Court concluded that Medrano waived these claims because he could have raised them on direct appeal, but failed to do so. *See People v. Medrano,* No. 01-05-1634, at 6. The post-conviction Illinois Appellate Court's finding that Medrano waived these claims is an adequate and independent state ground, and thus his fitness claims are procedurally defaulted. *See Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) ("A finding of waiver by the state postconviction court is enough to establish an adequate and independent state ground."). When a claim is procedurally defaulted, the habeas court is barred from reviewing the claim unless the habeas petitioner can establish cause and prejudice for the default or that a fundamental miscarriage of justice will occur if the court does not consider his claims. *See Woods v. Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009); *see also Coleman,* 501 U.S. at 750.

Although Medrano does not argue either exception to his procedural default, he maintains that his trial counsel was constitutionally ineffective for failing to request a fitness hearing. *See Brown v. Watters,* 599 F.3d 602, 609 (7th Cir. 2010) ("When preserved, meritorious claims of ineffective assistance can excuse default."); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008) ("Attorney error rising to the level of ineffective assistance of counsel

16

can constitute cause to set aside procedural default."). First, defense counsel did request a fitness hearing that the trial court granted, therefore, Medrano cannot establish that his counsel caused his procedural default. Also, Medrano cannot be prejudiced by any alleged failure because – as he admits – the trial court held a fitness hearing. *See Wrinkles,* 537 F.3d at 813 ("to show prejudice, the defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different") (internal quotations and citation omitted). Whether Medrano disliked the result of the fitness hearing does not establish that his defense counsel was constitutionally ineffective. Because Medrano procedurally defaulted his claims based on his fitness to stand trial, the Court cannot collaterally review them, and thus denies his fourth habeas claim.[1]

## V.     Apprendi Claim

Medrano next brings a habeas claim challenging his sentence based on the United States Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. The Supreme Court's decision in *Apprendi*, decided on June 26, 2000, is not retroactive, although it applies in this matter because Medrano's sentence was still pending on direct appeal when the Supreme Court decided *Apprendi*. *See White v. Battaglia,*

---

[1] Medrano also argues that appellate counsel on direct appeal was constitutionally ineffective for failing to raise the issue of his trial counsel's ineffectiveness in relation to his fitness to stand trial claim, as well as that the trial court erred by not conducting a fitness hearing. Because Medrano has not established that his trial counsel's conduct was prejudicial, his appellate counsel was not ineffective for failing to raise this claim. *See Martin v. Evans,* 384 F.3d 848, 852 (7th Cir. 2004) ("counsel is not required to raise every non-frivolous issue on appeal").

17

454 F.3d 705, 706 (7th Cir. 2006).

That being said, although Medrano evokes *Apprendi* in his habeas claim, his claim actually challenges the Illinois courts' application of the Illinois statute that permits an extended sentence where a defendant has been convicted of a Class X felony within ten years of the conviction for which he is being sentenced excluding time spent in custody. *See* 730 ILCS 5/5-5.3.2(b)(1); *People v. Garcia,* 396 Ill.App.3d 792, 337 Ill.Dec. 372, 922 N.E.2d 495 (Ill.App.Ct. 2009). Specifically, Medrano argues that – excluding his time in custody – the time between his 1975 rape conviction and the present 1994 conviction was more than ten years, and thus the extended sentencing statute did not apply. In particular, Medrano argues that the "appellate court clearly miscalculated the time defendant was out of custody between those two convictions" and that the appellate court's determination was "an incorrect finding of fact." R. 1-1, Habeas Pet., at 45.

Medrano's fifth habeas claim does not challenge the Illinois Appellate Court's application of *Apprendi*, but instead attacks the Illinois Appellate Court's application of the state sentencing statute for extended term sentences, 730 ILCS 5/5-5.3.2(b)(1). As such, Medrano's fifth habeas claim is not cognizable on federal collateral review. *See Dellinger v. Bowen,* 301 F.3d 758, 764 (7th Cir. 2002) ("an error in the interpretation of ... the application of state sentencing rules does not present a cognizable claim for federal habeas relief."); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Again, as stated above, "a federal court cannot issue a writ of habeas corpus that rests on a belief that a state court has misunderstood or misapplied state law." *Huusko,* 556 F.3d at 637.

Therefore, the Court denies Medrano's fifth habeas claim because it is not cognizable on habeas review.

## VI. Ineffective Assistance of Counsel Claim

Finally, Medrano argues that his trial counsel was constitutionally ineffective because counsel failed to reasonably investigate his defense. To establish ineffective assistance of counsel, Medrano must show (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *See Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Medrano fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant ...."); *see also Amerson v. Farrey,* 492 F.3d 848, 851 (7th Cir. 2007).

In his habeas petition, Medrano specifically argues that his trial counsel only visited him two times while he was at the Cook County Jail and that during those visits, counsel did not discuss trial strategy, potential defense witnesses, or any other matter relating to his defense. Medrano also argues that had trial counsel interviewed Jill Stewart prior to trial, counsel would have learned that the police detectives and the Assistant State's Attorney involved in his investigation tried to intimidate Stewart into making false statements about Medrano.

Medrano, however, did not raise this ineffective assistance of counsel claim at each level of state court review, and thus he has procedurally defaulted this claim. *See Crockett*, 542 F.3d at 1192; *see also Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) ("when a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of

review those claims are procedurally defaulted"). In particular, Medrano did not present this claim based on his defense counsel's pre-trial investigation on post-conviction appeal or in his post-conviction PLA. Instead, Medrano's post-conviction appeal and PLA focused on his fitness to stand trial. Accordingly, Medrano has procedurally defaulted this claim. *See Woods,* 589 F.3d at 373. Medrano makes no arguments to overcome his procedural default, and thus the Court is barred from reviewing his sixth habeas claim. *See Brown v. Watters,* 599 F.3d at 609; *see also Coleman,* 501 U.S. at 750. Therefore, the Court denies this last habeas claim.

## CONCLUSION

For these reasons, the Court denies Medrano's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1).

Dated: May 10, 2010

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Judge**